[Cite as *Pincus v. Pincus*, 2025-Ohio-1826.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ARLENE PINCUS, EXECUTOR, :

    Plaintiff-Appellant, :

                             No. 114071

v. :

HELENE FRUM PINCUS, ET AL., :

    Defendants-Appellees. :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART,
                AND REMANDED
**RELEASED AND JOURNALIZED:** May 22, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-23-982676

---

### *Appearances:*

Byron Legal, LLC, and Evan T. Byron, *for appellant*.

Law Office of Jaye Schlachet and Jaye M. Schlachet, *for appellee*, Helene F. Pincus.

Dennis A. Rotman, *for appellees* Steven Pincus and Pincus Bakery, Inc.

LISA B. FORBES, J.:

{¶ 1} Plaintiff-appellant Arlene Pincus, as executor of the estate of David

Pincus ("Arlene"), appeals from an order of the Cuyahoga County Court of Common

Pleas granting judgment on the pleadings in favor of defendants-appellees Steven Pincus ("Steven"), Helene Pincus ("Helene"), and Pincus Bakery ("the Bakery"). For the reasons that follow, we affirm the trial court's judgment in part, reverse it in part, and remand for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} This case stems from a decade-old legal dispute between family members regarding the proceeds and assets of the Bakery. Brothers David Pincus (now deceased) ("David") and Steven were owners and business partners of the Bakery — a family-owned-and-operated bakery that was started by David and Steven's parents in 1968. The Bakery permanently closed in 2016. Prior to his death, David was married to Arlene. Steven is married to Helene.

{¶ 3} In December 2014, Arlene, as the next best friend and legal representative for David, who at the time was in ill health, filed a lawsuit against Steven and the Bakery alleging that Steven had mismanaged the business and was wrongly taking a disproportionate share of the business income for himself. *See Pincus v. Pincus*, Cuyahoga C.P. No. CV-14-837153. That case concluded in October 2016, when Steven and the Bakery agreed to a consent judgment of $500,000 in favor of David. When the $500,000 judgment remained unpaid, Arlene hired legal counsel to assist in collecting. During this process, counsel allegedly discovered a series of fraudulent transfers of Bakery income and assets made by Steven to Helene in 2014 and 2015.

{¶ 4} On June 7, 2017, Arlene, on behalf of David, filed a complaint against Steven, Helene, and the Bakery alleging three counts of fraudulent transfer under R.C. 1336.04(A)(1), 1336.04(A)(2), and 1336.05(A), respectively, one count of civil conspiracy, and one count of malicious prosecution. The complaint alleged that "information discovered since October 17, 2016 [when the consent decree was entered into] demonstrates that Steven and Helene were engaging in both a civil conspiracy and fraudulent transfers in order to defraud Arlene (and David), who they knew they owed substantial sums of money to." The complaint further stated that between August 2014 and April 2015, Steven made a number of cash withdrawals from the Bakery's bank account and deposited those funds into a separate bank account registered to Helene, which she had opened in August 2014.

{¶ 5} Steven and the Bakery answered the complaint and filed a counterclaim for frivolous conduct under R.C. 2323.51. Arlene voluntarily dismissed the complaint pursuant to Civ.R. 41(A) in September 2018. However, the counterclaim remained pending.

{¶ 6} On January 16, 2019, Arlene filed a second complaint against Steven, Helene, and the Bakery asserting the same causes of action. Steven, Helene, and the Bakery moved for summary judgment as to all claims pending against them. The court granted the motion for summary judgment as to Arlene's malicious-prosecution claim, but denied summary judgment as to the fraudulent-transfer and civil-conspiracy claims. A trial date originally was set for October 16, 2019, however

due to several requests to continue and the COVID-19 pandemic, trial was postponed until February 13, 2023.

{¶ 7} On the day of trial, Steven, Helene, and the Bakery filed a motion to dismiss the action on the ground that David had died in July 2021 and no estate had been opened for him. Accordingly, the defendants argued that there was no plaintiff that had standing to prosecute the action. In light of this fact, the parties — following discussions between themselves, their attorneys, and the court — agreed to dismiss the action without prejudice. The handwritten agreement between the parties stated that the parties agreed to the following:

> 1. Plaintiffs dismiss their case in order to reopen an estate and refile their action.
>
> 2. Defendant Steven Pincus dismisses his counterclaim.
>
> 3. Each dismissal is otherwise than on the merits and subject to refiling and the parties agree to waive the double dismissal defense as this is a Civ.R. 41(A)(2) dismissal.

The parties filed the stipulated dismissal on February 14, 2023 (the "Stipulated Dismissal").

{¶ 8} Arlene opened an estate for David. On July 20, 2023, as executor of the estate, Arlene filed a third complaint against Steven, Helene, and the Bakery. The third complaint asserted the same claims of fraudulent transfer and civil conspiracy as the first two complaints. The defendants answered the complaint, citing the statute of limitations as an affirmative defense. They also filed counterclaim for frivolous conduct and tortious interference with a business contract.

{¶ 9} On February 10, 2024, Steven, Helene, and the Bakery filed a Civ.R. 12(C) motion for judgment on the pleadings. In it they argued that Arlene's claims for fraudulent transfer and civil conspiracy were based on alleged fraudulent transfers that occurred between August 2014 and April 2015. The defendants argued that since the statutes of limitations for fraudulent transfer and for civil conspiracy were four years from the date of transfer pursuant to R.C. 1336.09, Arlene's third complaint, which had been filed outside this four-year time frame, was time-barred by the statute of limitations.

{¶ 10} In response to the motion to dismiss, Arlene argued that the saving statute, R.C. 2305.19(A), saved her claims because her first complaint was filed on June 7, 2017, well within the four-year statute of limitations, and each subsequent complaint was filed within one year of a previous dismissal that was not an adjudication on the merits. Arlene additionally pointed out that defendants, as part of the agreement to dismiss the second complaint, had specifically waived any argument related to the double-dismissal defense so that the case could be refiled. Accordingly, Arlene contended that her third complaint, filed on July 20, 2023, related back to the filing date of her first complaint on June 7, 2017, thus placing its filing within the statute of limitations.

{¶ 11} In their reply brief, the defendants argued that the saving statute could be invoked only once and Arlene had already used it when she filed her second complaint against the defendants on January 16, 2019. In other words, because Arlene had dismissed and refiled the action twice, the saving statute would not

apply; the statute of limitations barred Arlene's entire third complaint. Although they had waived the application of the double-dismissal defense as part of the agreed-upon joint dismissal, they had not waived their right to assert the statute of limitations as a defense.

{¶ 12} On May 17, 2024, the trial court granted defendants' motion for judgment on the pleadings and dismissed the case. The court determined that plaintiff's claims were time-bared by R.C. 1336.09 because the third complaint was filed more than four years after the alleged fraudulent transfers occurred. Moreover, Ohio's saving statute did not apply to avoid the statute of limitations because there was a "one use" restriction on its use. In arriving at this conclusion, the court relied on this court's decisions in *Hamrick v. Ramalia*, 2012-Ohio-1953 (8th Dist.), and *Rector v. Dorsey*, 2021-Ohio-2675 (8th Dist.), which, in turn, looked to statements made by the Ohio Supreme Court in *Thomas v. Freeman*, 79 Ohio St.3d 221, 227 (1997). Lastly, the court determined that the defendants' agreement to waive the double-dismissal defense did not preclude them from raising the statute of limitations as a defense.

{¶ 13} From this decision Arlene appeals raising the following assignment of error: "The trial court committed reversible error by granting Defendants' motion for judgment on the pleadings."

## II. LAW AND ANALYSIS

### A. Standard of Review

{¶ 14} Civ.R. 12(C) states that "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "'In ruling on a Civ.R. 12(C) motion, the court is permitted to consider both the complaint and the answer as well as any material attached as exhibits to those pleadings.'" *Weiler v. Osborn Eng. Co.*, 2023-Ohio-619, ¶ 15 (8th Dist.), quoting *Bank of Am., N.A. v. Michko,* 2015-Ohio-3137, ¶ 37 (8th Dist.). Before the trial court can dismiss an action under Civ.R. 12(C), it must determine that no genuine dispute of material fact exists and that the movant is entitled to judgment as a matter of law. *Id.* In making this determination, the trial court is required to accept the allegations in the complaint as true and construe all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at ¶ 15-16.

{¶ 15} "If an answer to a complaint raises the statute of limitations as an affirmative defense, 'and the pleadings unequivocally demonstrate that the action was commenced after the limitations period expired, Civ.R. 12(C) relief is appropriate.'" *Mobley v. Klimas*, 2024-Ohio-2167, ¶ 14 (8th Dist.), quoting *Mangelluzzi v. Morley*, 2015-Ohio-3143, ¶ 9 (8th Dist.).

{¶ 16} This court reviews de novo a trial court's grant of a motion for judgment on the pleadings. *See Weiler* at ¶ 16. Under this standard of review, the appellate court independently reviews the record and affords no deference to the

trial court's decision. *See Kohn v. Glenmede Trust Co., N.A.*, 2025-Ohio-1058, ¶ 14 (8th Dist.).

## B. Statute of Limitations and Saving Statute

{¶ 17} R.C. 1336.09 provides the statute of limitations for Arlene's claims for fraudulent transfer brought under R.C. 1336.04(A)(1), 1336.04(A)(2), and 1336.05(A), and states:

> A claim for relief with respect to a transfer or an obligation that is fraudulent under section 1336.04 or 1336.05 of the Revised Code is extinguished unless an action is brought in accordance with one of the following:
>
> (A) If the transfer or obligation is fraudulent under division (A)(1) of section 1336.04 of the Revised Code, within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant;
>
> (B) If the transfer or obligation is fraudulent under division (A)(2) of section 1336.04 or division (A) of section 1336.05 of the Revised Code, within four years after the transfer was made or the obligation was incurred; . . . .

{¶ 18} Arlene's claim for civil conspiracy has the same statute of limitations as her fraudulent-transfer claims. *See Figgie v. Figgie*, 2025-Ohio-451, ¶ 39 (8th Dist.), citing *Arnoff v. PAJ Ents., L.L.C.*, 2022-Ohio-1759, ¶ 18 (8th Dist.) (A civil-conspiracy claim is derivative in nature, meaning it cannot be maintained without the existence of an underlying tort that would be actionable in the absence of conspiracy allegations.). *See also Ford Motor Credit Co. v. Jones*, 2009-Ohio-3298, ¶ 24 (8th Dist.) (The applicable statute of limitations for a claim of civil conspiracy is the statute of limitations that applies to the underlying tort.). The claim, therefore,

must have been brought within four years after the transfer was made where the underlying tort is for fraudulent transfer in violation of R.C. 1336.04(A)(2) or 1336.05(A), or within four years after the transfer, or one year after the transfer was or reasonably could have been discovered where the underlying tort is fraudulent transfer in violation of R.C. 1336.04(A)(1). *See* R.C. 1336.09.

{¶ 19} The Ohio saving statute, R.C. 2305.19, affords a plaintiff a limited time period to refile a dismissed claim that would otherwise be time-barred by the statute of limitations. *Nye v. Univ. of Toledo*, 2013-Ohio-2311, ¶ 23 (10th Dist.). R.C. 2305.19(A) provides:

> In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff . . . may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later.

{¶ 20} Until recently, it was the law in this district that refiling a lawsuit following a dismissal without prejudice invoked, or used, R.C. 2305.19(A) even when the refiling occurred within the original statute-of-limitations period. *Rector*, 2021-Ohio-2675 (8th Dist.). It was also the law in this district that R.C. 2305.19(A) could be used only once to refile an action. *Id.* Accordingly, cases were dismissed on the grounds that the saving statute could not be invoked twice when the original complaint had been dismissed and refiled within the statute of limitations and then that second complaint was dismissed and refiled again, this time outside of the statute of limitations. *Id.*

**{¶ 21}** In July 2024, the Ohio Supreme Court issued *McCullough v. Bennett*, 2024-Ohio-2783, which clarified the law on this point. In *McCullough*, the Court determined that R.C. 2305.19(A) is invoked when a refiling occurs within the statute-of-limitations period. *See id.* The Court also held that there is no one-use restriction on the saving statute that prevents it from being invoked again upon the refiling of a complaint after the statute of limitations has expired. *Id.* at ¶ 16-17. We note that in this case the trial court issued its dismissal order on May 17, 2024, approximately two months before the Ohio Supreme Court's opinion in *McCullough*.

**{¶ 22}** Since the *McCullough* decision was issued, this court has addressed whether and how the saving statute applies after the statute of limitations has expired. In both *Gilles v. Donegan*, 2024-Ohio-6023 (8th Dist.), and *Battaglia v. Donegan*, 2024-Ohio-6022 (8th Dist.), this court explained that where the original complaint is filed within the statute of limitations, dismissed, and a second complaint is refiled outside of the statute of limitations, the saving statute would apply to save the claims. But where a case is dismissed a second time, and a third complaint is refiled outside of the statute of limitations, the saving statute operates to "save" only those claims that were timely filed in the second complaint. *See Gilles* at ¶ 29-34; *see also Battaglia* at ¶ 36. This court clarified that the latest case filing does not, as the plaintiffs in those cases argued, "relate back" to the date of the filing of the original complaint because the Ohio Supreme Court expressly rejected the

relation-back concept in *Wilson v. Durrani*, 2020-Ohio-6827, ¶ 25-28. *See Gilles* at ¶ 25-28; *see also Battaglia* at ¶ 30-32.

{¶ 23} Applying *Gilles* and *Battaglia* to the facts at issue here, we find that some — but not all — of Arlene's fraudulent-transfer claims are time-barred by the statute of limitations. In her arguments before the trial court, Arlene agreed that her fraudulent-transfer claims were governed by a four-year statute of limitations from the date of the alleged transfers. The dates of the alleged transfers are detailed in her complaint as follows:

> Between August 2014 and April 2015, a total of more than 25 cash deposits were made into this account ranging from $1,000 to $4,000, and all of which were round number deposits. An additional $45,000 in checks from Steven and the bakery were also deposited into this account. All told, a total of more than $100,000 was deposited into Helene's account at Fifth Third during this 8-month span.

{¶ 24} Based on the allegations in the complaint, the four-year statute of limitations would have begun to run from August 2014 to April 2015 (the dates of the transfers), and would have ended between August 2018 and April 2019 (four years later).[1] Arlene's first complaint was filed on June 7, 2017, within the four-year

---

[1] Arlene, for the first time on appeal to this court, argues that she has four years to bring her claim from the date she *discovered or reasonably could have discovered* the transfers. Arlene asserts that when construing her complaint most strongly in her favor, as is required under Civ.R. 12(C), the statute of limitations did not begin to run until October 17, 2016. She makes this argument based on paragraph 43 of her complaint, which states: "Information discovered since October 17, 2016 demonstrates that Steven and Helene were engaging in both a civil conspiracy and fraudulent transfers in order to defraud Arlene (and David), who they knew they owed substantial sums of money to." She argues that based on the October 17, 2016 "discovery" date, the four-year statute of limitations would have expired on October 17, 2020. She, therefore, asserts that her first complaint filed in June 2017 and her second complaint filed in January 2019 were filed

limitations period for all transfers. She voluntarily dismissed the action without prejudice pursuant to Civ.R. 41(A) on September 4, 2018. Arlene then refiled the complaint on January 16, 2019. The second complaint was filed within four years of the transfers taking place between January 16, 2015 and April 2015; however, the second complaint was outside of the statute of limitations for the transfers occurring between August 2014 and January 15, 2015. Nevertheless, since the second complaint was filed within one year of dismissal otherwise than upon the merits of a timely filed complaint, the saving statute applied to save Arlene's claims concerning the August 2014 through January 15, 2015 transfers. Accordingly, had there been no further dismissals of the complaint, all claims of fraudulent transfer would have been saved from a statute-of-limitations defense. But that is not what happened.

---

prior to the expiration of the statute of limitations. As such, she argues that the September 14, 2018 dismissal of the first complaint and the January 16, 2019 refiling of the second complaint technically did not invoke the saving statute because there was nothing yet to "save."

We are not persuaded by Arlene's newly asserted argument, which appears to be based on a misunderstanding of the discovery provision included in R.C. 1336.09(A). The statute's discovery provision plainly states that a fraudulent-transfer claim filed more than four years after the transfer occurred will not be time-barred if the action is filed within one year of the date the plaintiff discovered, or reasonably could have discovered, the fraudulent transfer. *See* R.C. 1336.09(A). Nowhere in the statute does it say that a plaintiff has four years from the date of discovery to file a claim. Accordingly, we decline to apply a four-year discovery rule.

One year from the alleged October 16, 2016 discovery date is October 17, 2017. Since Arlene filed the first complaint within this time frame on June 7, 2017, application of the statute's one-year discovery rule would have no effect on this court's analysis or conclusion that some of Arlene's claims are time-barred. She would still have to use the saving statute more than once after the statute of limitations expired, something she cannot do.

{¶ 25} Rather, on February 14, 2023, pursuant to the Stipulated Dismissal, the second complaint was dismissed without prejudice. Arlene then filed the complaint for a third time on July 20, 2023. Although Arlene refiled the third complaint within one year of the second complaint's dismissal otherwise than upon the merits, the second complaint had not been timely filed as it pertained to the August 2014, through January 15, 2015 transfers. Accordingly, the saving statute does not save the claims in the third complaint alleging fraudulent transfers occurring between August 2014, and January 15, 2015. The saving statute would apply, however, to save the claims in the third complaint related to the January 16, 2015, through April 2015 transfers because the second complaint was filed within the four-year statute of limitations on those claims.

{¶ 26} In light of the analysis above, we find that the trial court erred in granting judgment on the pleadings and dismissing Arlene's claims related to the alleged transfers that occurred between January 16, 2015, and April 2015.

### C. The Parties' Agreement to Dismiss

{¶ 27} In an alternative argument on appeal, Arlene claims that the trial court erred in granting judgment on the pleadings because the Stipulated Dismissal of the second complaint included an implied agreement to waive the statute-of-limitations defenses. We disagree.

{¶ 28} The Stipulated Dismissal clearly sets out the agreement between the parties and states that the parties agree to: (1) dismiss the complaint without prejudice, (2) dismiss the defendants' counterclaim, and (3) waive the double-

dismissal defense. The double-dismissal defense derives from Civ.R. 41(A), which states that a plaintiff's voluntary dismissal of a claim is without prejudice except that "a notice of dismissal operates as an adjudication upon the merits of any claim that the plaintiff has once dismissed in any court." What the double-dismissal defense means, then, is that a second voluntary dismissal of a claim is with prejudice. Therefore, it cannot be litigated again. The double-dismissal defense stems from Civ.R. 41(A), not the statute of limitations.

{¶ 29} Nowhere in the Stipulated Dismissal is there any agreement to waive the statute of limitations. That the parties' agreement contains the explicit stipulated waiver of one defense — the double-dismissal defense — but no others, indicates that the parties understood that they could stipulate to waive certain defenses, but chose not to waive any others. *See, e.g., Beyer v. Miller*, 90 Ohio App. 66 (12th Dist. 1951), paragraph three of the syllabus ("In seeking the intent of parties to a stipulation, the language used will not be so construed as to give to it the effect of an admission of a fact obviously intended to be controverted or a waiver of a right not plainly intended to be relinquished."). We find that the trial court did not err in finding that the parties did not waive the statute of limitations in the Stipulated Dismissal.

## III. Conclusion

{¶ 30} For the foregoing reasons, we determine that the trial court erred in granting judgment on the pleadings in favor of defendants-appellees Steven, Helene, and the Bakery as to all of plaintiff-appellant's claims. Only the claims

pertaining to alleged fraudulent transfer occurring between August 2014 and January 15, 2015, were barred by the statute of limitations and, therefore, properly disposed of by the court in favor of the defendants-appellees. The remainder of plaintiff-appellant's claims concerning alleged transfers that occurred between January 16, 2015, and April 2015, are not barred by the statute of limitations and remain pending. Accordingly, we remand to the trial court for further proceedings consistent with this opinion. Plaintiff-appellant's assignment of error is sustained in part and overruled in part.

{¶ 31} Judgment affirmed in part, reversed in part, and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant and appellees share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
LISA B. FORBES, JUDGE

EILEEN A. GALLAGHER, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR

Statute of limitations; saving statute; R.C. 2305.19; one-use restriction; fraudulent transfer; R.C. 1336.09; double-dismissal rule.

Judgment affirmed in part and reversed in part.  The saving statute, R.C. 2305.19, does not save claims that are refiled a second time after the expiration of the statute of limitations.  Accordingly, the trial court did not err in granting defendants' motion for judgment on the pleadings based on the defense of statute of limitations as to plaintiff's claims that had been refiled twice outside the statute of limitations.  The trial court did err in granting judgment on the pleadings for plaintiff's claims that were refiled only once outside of the statute of limitations because the saving statute applied to those claims.